IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MALLORY SWEIGART, | : |
| | : CASE NO. 2:26-cv-286 |
| PLAINTIFF, | : |
| | : |
| v. | : JUDGE |
| | : |
| NETJETS SERVICES, INC., | : |
| | : |
| And | : |
| | : |
| Does 1-50, | : |
| | : |
| DEFENDANTS. | : |

## COMPLAINT

Plaintiff Mallory Sweigart, by and through her undersigned counsel, states as follows for her Complaint against Defendant NetJets Services, Inc. and others not presently known to Plaintiff at this time:

## NATURE OF THE ACTION

1. This is an action for sex discrimination, sexual harassment, hostile work environment, retaliation, disability discrimination, failure to accommodate, retaliatory discharge, and post-employment retaliation in violation of Title VII of the Civil Rights Act and the Americans with Disabilities Act, as amended against Defendant NetJets Services, Inc. arising from a series of related events that occurred during and after Plaintiff's employment, which have adversely affected her ability to find work as a talent acquisition professional and have caused her to suffer profound emotional distress.

2. Defendant subjected Plaintiff to severe and pervasive sexual harassment, perpetrated by a senior management employee with substantial influence over Plaintiff's

1

employment, including repeated unwelcome sexual advances and the exposure of his genitals inside Plaintiff's home. This senior management employee was in a position of power within Defendant due to his extensive relationships within the company and the aircraft maintenance industry, and specifically within the "old boys' network" that exists within Defendant.

3. Plaintiff suffers from Post-Traumatic Stress Disorder and related conditions and requested reasonable accommodations. Although Plaintiff received certain accommodations, Defendant discharged her after she reported sexual harassment and disability discrimination, filed a charge with the U.S. Equal Opportunity Commission, and escalated concerns of unethical and unlawful conduct to Defendant's parent corporation.

4. Defendant and its employees continued its retaliation against Plaintiff after Defendant discharged her by interfering with Plaintiff's ability to obtain employment within the aircraft maintenance recruiting industry.

5. Plaintiff has incurred substantial damages, including lost wages, and has been subjected to intense emotional distress because of Defendant's intentional, malicious, and otherwise reckless conduct.

**PARTIES, JURISDICTION, AND VENUE**

6. Plaintiff Melody Sweigart is a citizen of the State of Florida. Plaintiff's employment location Defendant was Columbus, Ohio. Plaintiff worked in both hybrid and fully remote roles for Defendant from Central Ohio.

7. Defendant is a corporation organized under the laws of the State of Delaware with its principal place of business located at 4151 Bridgeway Ave, Columbus, OH 43219. Defendant operates and maintains the world's largest, most diverse private jet fleet. It is the leading fractional aircraft company offering superior private aviation solutions favored by the most

discerning travelers. It operates a vast, versatile private jet fleet, and proven business model to ensure seamlessness and stability unmatched by other providers of fractional aircraft ownership. NetJets, a Berkshire Hathaway company, empowers luxury travel marked by its resolute commitment to the highest safety standards, personalized service, and global access.

8. Jurisdiction is proper under 28 U.S.C. § 1331, 28 U.S.C. § 1367, 42 U.S.C. § 2000e-5(f)(3) and 42 U.S.C. § 12117.

9. At all relevant times Defendant employed more than fifteen employees and is therefore an employer within the meaning of Title VII and the Americans with Disabilities Act.

10. Furthermore, Plaintiff has elected to file this action in this Court pursuant to the Notice of Right to Sue received from the U.S. Equal Employment Opportunity Commission dated December 15, 2025. Accordingly, Plaintiff filed this action within ninety (90) days of receiving the EEOC Notice of Right to Sue. A copy of the Right to Sue is attached as Exhibit A.

11. Plaintiff has satisfied all administrative prerequisites to bringing this action under Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act.

12. Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391 and Local Rule 82.1.

## FACTS COMMON TO ALL CLAIMS

13. Plaintiff incorporates by reference all preceding allegations.

14. Prior to commencing full time employment with Defendant, Plaintiff was a contract recruiter. Defendant hired her as a direct employee after one year as a contractor.

15. Plaintiff began employment with Defendant at its Columbus, Ohio offices in September 2022 as a Senior Recruiter earning base pay of approximately $128,000.00 plus

exceptional employee health and retirement benefits. Defendant almost immediately offered Plaintiff the opportunity to work in a fully remote capacity due to space limitations at its offices.

16. Plaintiff was a high performing recruiter responsible for aircraft maintenance personnel recruitment. She received exceptional performance reviews and annual pay increases.

17. Plaintiff suffers from PTSD and related conditions that are classified as disabilities under the Americans with Disabilities Act. She disclosed her diagnoses to Defendant, and Defendant therefore knew or should have known of her disabilities.

18. Other senior management employees and Plaintiff's colleagues knew about Plaintiff's medical condition. They included Rona Orbovich, Dani-Rae Strohminger, Melody Wonderly, and Mary Sullivan. These individuals repeatedly and viciously attacked Plaintiff, referring to her as "unstable" and "emotionally compromised." This exacerbated Plaintiff's PTSD and her mental health consequently deteriorated. Defendant knew or should have known that this was ongoing and repeated harassment based upon Plaintiff's disabilities.

19. Plaintiff requested a reasonable accommodation beginning in February 2023 – i.e., to work in a fully remote capacity rather than in an on-site or hybrid role. Plaintiff initially received the accommodation. The harassment concerning Plaintiff's disabilities did not stop, however. It continued.

20. Beginning in or around August 2023, sensing that Plaintiff was vulnerable, another senior management employee, Jason Porfio – commonly known as "The King of Maintenance," began pressuring Plaintiff to meet privately with him over dinners and cocktails. Porfio's actual title with Defendant was "Director of Maintenance."

21. Porfio cloaked his sexual interest in Plaintiff initially by telling her that he wanted her to work as a Senior Recruiter on his team. He and another senior management employee,

4

John Geltinger, described the dinner and cocktail invitations as "get to know you" opportunities that would facilitate Plaintiff's career advancement.

22. Porfio subjected Plaintiff to unwelcome sexual advances over a period of weeks and months in person, via text message and over the telephone. He made sexual comments and physical advances and repeatedly attempted to leverage job opportunities with the company in exchange for Plaintiff consenting to his sexual advances. Porfio took advantage of Plaintiff by offering her a position on his team that would allow her to stay at NetJets, but in a different department where she purportedly could escape the ongoing disability discrimination, harassment, and retaliation she was experiencing. He leveraged his position to create a *quid pro quo* situation, which Plaintiff refused.

23. Porfio's sexual harassment and physical advances worsened Plaintiff severe emotional distress and pervasively interfered with Plaintiff's work performance. Plaintiff was terrified to report the conduct. Plaintiff feared retaliation from Porfio and Defendant if she reported Porfio's unwelcome sexually-charged conduct and severe and pervasive harassment.

24. In November 2023, Porfio exposed his genitals to Plaintiff in her home and attempted to force himself on Plaintiff. She resisted and demanded that he leave immediately.

25. Porfio repeatedly contacted Plaintiff after she demanded that he stop doing so. He attempted to manipulate her emotionally and pressure her into a relationship despite Plaintiff informing him that his actions were unwelcome and that they adversely affected her mental and psychological health.

26. Other employees and members of senior management knew or should have known of Porfio's conduct toward Plaintiff but failed to intervene or report it.

27. Eventually, despite her extreme fear and exacerbated PTSD symptoms, Plaintiff mustered the strength to formally report Porfio's conduct to Defendant.

28. Defendant discharged Porfio. This was a partial solution. Other of Defendant's senior managers continued to treat Plaintiff hostilely and with disdain after learning that she reported what Porfio – The King of Maintenance – did to her, which resulted in his discharge.

29. Plaintiff learned that Porfio was in contact with other senior managers at Defendant, and that they and Porfio combined to continue their hostile and retaliatory behavior toward her after she reported Porfio's conduct.

30. Porfio almost immediately accepted employment with an aircraft maintenance vendor of Defendant and continued to have direct contact with Defendant's senior managers. These are the same people who had influence over Plaintiff's employment and employment conditions.

31. Porfio was, and remains, part of an "old boys' network" in the aircraft maintenance industry, which is tightknit. Defendant's employees, including senior management employees, began targeting Plaintiff more systematically after Plaintiff reported Porfio thereby making it increasingly difficult for her to perform her job duties. The "old boys' network" within Defendant was exacting revenge for the "The King."

32. Unsatisfied that Defendant had taken appropriate action to protect her, and would not undertake such action, Plaintiff escalated her concerns to Defendant's parent company Berkshire Hathaway. Berkshire Hathaway never contacted Plaintiff and, upon information and belief, never initiated an investigation or directed Defendant to do so.

33. Defendant's senior leadership knew or should have known of Plaintiff's complaints yet failed to undertake a meaningful investigation or take steps reasonably calculated to prevent continued retaliation against Plaintiff.

34. Plaintiff then filed, and subsequently amended, her EEOC Charge. This occurred during her employment with Defendant.

35. Plaintiff requested and received Family and Medical Leave Act beginning on or about January 15, 2024, and concluding on or about April 30, 2024. She then took short-term disability leave.

36. Plaintiff's short-term leave ended on or about August 12, 2024. In preparing to return to work, Plaintiff requested an accommodation based upon the ongoing harassment she experienced from Defendant's management and employees. She simply asked to continue working remotely so that she did not have to confront her harassers daily at Defendant's facilities. Defendant refused her reasonable request and moved to discharge her. Plaintiff remained able to perform the essential functions of her position with the reasonable accommodation of continued remote work.

37. Defendant discharged Plaintiff on August 12, 2024, after it refused to grant her the very same accommodation she had since almost the beginning of her full time employment in September 2022 – i.e., the ability to work remotely. In fact, all Plaintiff wanted to do was work in a location that did not require her to suffer discrimination at the hands of co-workers and senior managers who openly harassed and mocked her because of her disabilities.

38. After Defendant discharged her, Plaintiff applied for talent acquisition positions within the aircraft maintenance industry. Plaintiff focused her search on this industry given her experience and expertise recruiting highly skilled mechanics, including military veterans being

7

re-skilled for high-paying civilian aircraft mechanic jobs, and creating programs to attract and retain highly skilled aircraft mechanics.

39. Defendant continually sabotaged Plaintiff's job search efforts, providing negative information about Plaintiff to prospective employers. Plaintiff has interviewed for dozens of positions and remains unemployed. Defendant's conduct is linked to Plaintiff's complaints of sexual harassment and disability discrimination and a cause of her continued unemployment.

40. Plaintiff has undertaken reasonable efforts since her discharge to obtain equivalent employment as a talent acquisition professional to no avail. Plaintiff has mitigated her damages to the best of her reasonable ability in the context of (a) Defendant's post-employment retaliation, and (b) the extensive damage Defendant caused to Plaintiff's mental health.

41. Plaintiff has experienced substantial economic harm and severe, ongoing and continuous emotional distress because of Defendant's discriminatory and retaliatory conduct.

42. As a direct and proximate result of Defendant's acts and omissions, Plaintiff suffered lost wages, front pay, loss of earning capacity, emotional distress, reputational damage, and other damages.

43. Defendant acted with malice, reckless indifference, and conscious disregard for Plaintiff's federally protected rights and rights under Ohio law, warranting an award of punitive damages and attorneys' fees as allowed under applicable law.

## CAUSES OF ACTION

### COUNT I: DISABILITY DISCRIMINATION AND FAILURE TO ACCOMMODATE

44. Plaintiff incorporates by reference all preceding allegations.

45. Plaintiff is an individual with a disability and qualified for the position she held at the time of her employment with Defendant and eventual discharge.

46. Defendant knew or had reason to know of Plaintiff's disabilities.

47. Plaintiff requested a reasonable accommodation from Defendant – i.e., remote work, so that she could continue to perform her job duties. Defendant failed to reasonably accommodate Plaintiff following her request.

48. Defendant subjected Plaintiff to unlawful discriminatory treatment, failed to provide a reasonable accommodation, and discharged her from employment because of her disability.

## COUNT II: SEXUAL HARASSMENT & HOSTILE WORK ENVIRONMENT

49. Plaintiff incorporates by reference all preceding allegations.

50. Plaintiff was the subject of unwelcome and unlawful harassment based upon her sex.

51. The harassment Plaintiff experienced unreasonably interfered with her work performance and was severe, pervasive, physically invasive, altered the terms and conditions of her employment, and created a hostile or offensive working environment.

52. Defendant NetJets knew or should have known of the charged sexual harassment and failed unreasonably to take prompt and appropriate corrective action.

53. Defendant is vicariously liable for the conduct of its management employees.

## COUNT III: TITLE VII RETALIATION

54. Plaintiff incorporates by reference all preceding allegations.

55. Plaintiff engaged in protected activity when she reported sexual harassment to Defendant.

56. Defendant knew of the unlawful sexual harassment and that Plaintiff reported it.

57. Defendant subjected Plaintiff to materially adverse employment actions, including without limitation discharge from employment.

58. A but-for causal connection exists between Plaintiff's protected activity and Defendant's adverse employment action.

## COUNT IV: ADA RETALIATION

59. Plaintiff incorporates by reference all preceding allegations.

60. Plaintiff engaged in protected activity under the ADA when she reported discrimination to Defendant. Defendant knew that Plaintiff exercised her protected rights.

61. Defendant retaliated against Plaintiff because of her disability, including without limitation denying her request for reasonable accommodation and then discharging her, when she became able to return to work following FMLA and short-term disability leave.

62. A causal connection exists between Plaintiff's protected activity and Defendant's adverse employment action.

## COUNT V: POST-EMPLOYMENT RETALIATION

63. Plaintiff incorporates by reference all preceding allegations.

64. Title VII and the ADA prohibit retaliation against former employees who engaged in protected activity. Plaintiff engaged in such activity, and Defendant knew that Plaintiff exercised her protected rights.

65. Defendant provided negative employment information to Plaintiff's prospective employers in retaliation for her protected activity causing Plaintiff to remain unemployed for an extended period.

66. A causal and temporal connection exists between Plaintiff's protected activity and Defendant's ongoing efforts to disparage Plaintiff in the aircraft maintenance industry such that she cannot obtain employment.

### COUNT VI: VICARIOUS LIABILITY FOR ACTS OF MANAGEMENT EMPLOYEES

67. Plaintiff incorporates by reference all preceding allegations.

68. Defendant is vicariously liable for the torts of its employees under the doctrine of respondeat superior.

69. Defendant at all times relevant to this action exercised control over Jason Porfio and others such that it must be held liable for their tortious conduct.

70. Plaintiff has been damaged in an amount greater than $75,000 as a direct and proximate cause of Defendant's employees' conduct.

### COUNT VII: WRONGFUL TERMINATION IN VIOLATION OF OHIO PUBLIC POLICY

71. Plaintiff incorporates by reference all preceding allegations.

72. The conduct described in this Complaint violates well-established Ohio Public Policy, codified in Ohio Revised Code Chapter 4112 and the Ohio Constitution, against discrimination and retaliation and therefore gives rise to an independent cause of action for wrongful termination under Ohio law.

73. Discharging Plaintiff because she complained about sexual harassment and disability discrimination jeopardizes Ohio Public Policy.

74. Defendant discharged Plaintiff because of the activity she undertook to report sexual harassment and disability discrimination.

75. Defendant lacked an overriding legitimate business justification for discharging Plaintiff.

76. Defendant has damaged Plaintiff in an amount greater than $75,000.

## COUNT VIII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

77. Plaintiff incorporates by reference all preceding allegations.

78. Defendant's conduct toward Plaintiff was extreme and outrageous, intended to cause emotional distress or was reckless in that regard.

79. Plaintiff has suffered serious emotional distress as a direct and proximate result of Defendant's conduct and consequently has been damaged.

80. Defendant's conduct was intentional, willful, wanton, malicious, and reckless.

81. Defendant has damaged Plaintiff in an amount greater than $75,000.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues set forth herein so triable pursuant to Fed. R. Civ. P. 38.

**[REMAINDER OF PAGE INTENTIONALLY BLANK]**

**DEMAND FOR RELIEF**

WHEREFORE, Plaintiff Melody Sweigart hereby demands judgment against Defendant NetJets Services, Inc. for all compensatory and punitive damages, attorneys' fees and costs, and such other relief the Court deems just and necessary as allowed by applicable law.

Respectfully submitted,

*/s/ Brian J. Laliberte*
Brian J. Laliberte (0071125)
LALIBERTE LLC
1299 Virginia Avenue – Suite B
Columbus, OH 43212
T. 614.284.7171
E. Brian@LawyerCollective.com

*/s/ Edward W. Hastie*
Edward W. Hastie III (0079438)
Hastie Law Office LLC
1299 Virginia Avenue
Columbus, OH 43212
T. 614.488.2800
E. Ed@hastielegal.com

Attorneys for Plaintiff Mallory Sweigart